# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT
# CASE NO. 22-10419

_____

## UNITED STATES OF AMERICA,

### Appellee,

### vs.

## JONATHAN GUERRA BLANCO,

### Appellant.
_____

## ON APPEAL FROM THE UNITED STATES DISTRICT
## COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
_____

## BRIEF OF APPELLANT
_____

Ana M. Davide, Esq.
Florida Bar No. 875996
ANA M. DAVIDE, P.A.
420 South Dixie Highway, Suite 4B
Coral Gables, Florida 33146
Telephone: (305) 854-6100
Fax: (305) 854-6197
E-mail: ana@anadavidelaw.com
(Counsel for Appellant,
*Jonathan Guerra Blanco*.)

## CERTIFICATE OF INTERESTED PERSONS

Appellant, Jonathan Guerra Blanco, sets forth this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities that have an interest in this appeal:

| | |
|---|---|
| Becerra, Jacqueline | United States Magistrate Judge |
| Blanco, Jonathan Guerra | Defendant/Appellant |
| Davide Ana M. | Counsel for Defendant/Appellant |
| Dopico, Hector | Federal Public Defender's Office |
| Galler, Brandy Brentari | Assistant United States Attorney |
| Gilbert, Karen E. | Assistant United States Attorney |
| Gonzalez, Juan Antonio | The United States Attorney (SDFL) |
| Grosnoff, Nicole | Assistant United States Attorney |
| Kobrinski, Jonathan | Assistant United States Attorney |
| Louis, Lauren Fleischer | United States Magistrate Judge |
| Lyons, Clara | United States Probation Officer |
| McAliley. Chris M. | United States Magistrate Judge |
| Rubio, Lisa Tobin | Assistant United States Attorney |
| Scola, Jr., Robert N. | United States District Court Judge |
| Smachetti, Emily M. | Assistant United States Attorney |

Torres, Edwin G.                          United States Magistrate Judge

United States of America                  Plaintiff/Appellee

## <u>CORPORATE DISCLOSURE STATEMENT</u>

There are no publicly traded corporations involved in this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

It is respectfully submitted that oral argument should be heard in this case inasmuch as the court may desire to focus on certain facts and legal arguments through questions posed to the respective counsel that may supplement the discussion in the briefs. Additionally, the decisional process may be aided by oral argument inasmuch as this appeal concerns issues that are not often considered by this Honorable Court.

## **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ……………...…….…….. C-1/C-2

STATEMENT REGARDING ORAL ARGUMENT ……………….…….…….. i

TABLE OF CONTENTS ……………...……………………....…….…….… ii-iii

TABLE OF AUTHORITIES ………………………..……..…....…....... iv-viii

STATEMENT OF JURISDICTION ……………………………….…...…..... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ……………….…..… 2

STATEMENT OF THE CASE AND FACTS ……………………….......... 2

A. Statement of the Case …………………………………………….…… 2

B. Statement of the Facts ………………………………………………….. 5

STANDARD OF REVIEW ……………………………………….…….…..… 11

SUMMARY OF THE ARGUMENTS …………………………….…….…..… 12

ARGUMENT ……………………………………………….…………….......... 14

    I.  THE TRIAL COURT ERRED IN DENYING DEFENDANT'S
    EMERGENCY MOTION FOR A "KASTIGAR HEARING" WHERE
    THE GOVERNMENT IMPROPERLY UTILIZED INFORMATION AT
    THE SENTENCING HEARING THAT THEY OBTAINED FROM THE
    DEFENDANT'S COMPUTER AFTER HE SUPPLIED THE ACCESS
    PASSWORDS AT HIS DEBRIEFING, AND WHERE IT WAS
    AGREED THAT THE "KASTIGAR LETTER" WOULD COVER
    WHATEVER THE GOVERNMENT OBTAINED FROM ANY
    DEVICES THE GOVERNMENT MAY ACCESS WITH THE
    PASSWORDS PROVIDED BY THE DEFENDANT ………………………… 14

**Page**

II. THE TRIAL COURT ERRED IN IMPOSING THE TWELVE (12) LEVEL "TERRORISM" SENTENCING ENHANCEMENT AND A CRIMINAL HISTORY CATEGORY OF VI PURSUANT TO U.S.S.G. §3A1.4(a) AND (b), AND IN OVERRULING DEFENDANT'S OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT IN THAT REGARD …………………………………….……………..… 19

III. THE TRIAL COURT ERRED WHEN, AFTER DETERMINING THAT THE TWELVE (12) LEVEL "TERRORISM ENHANCEMENT" APPLIED IN THIS CASE, THE COURT FAILED TO APPLY THE THREE (3) LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY FROM THE GUIDELINE LEVEL SET BY USSG §5G1.1(a), TO WIT: THE STATUTORY MAXIMUM (20-YEARS), BUT RATHER MERELY CONSIDERED THE ACCEPTANCE AS A DEPARTURE/VARIANCE FACTOR ………………………………….. 48

CONCLUSION ……………………………………………….……..……… 53

CERTIFICATE OF COMPLIANCE …………………….………..…….…..…... 54

CERTIFICATE OF SERVICE ……………………….………..……..…..…..... 55

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page</u>

*Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586,
169 L.Ed.2d 445 (2007) …………………………………………………… 12, 19

*Holder v. Humanitarian Law Project*, 561 U.S. 1, 130 S.Ct. 2705,
177 L.Ed.2d 355 (2010) ………………………………………………….. 27

*Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653,
32 L.Ed.2d 212 (1972) …………………………………………...……14-17

*Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016) ……………………… 19

*Peugh v. United States*, 133 S. Ct. 2072 (2013) …………………………….…… 19

*United States v. Abu Khatallah*, 314 F. Supp. 3d 179 (D.D.C. 2018) ………….… 30

*United States v. Alhaggagi*, 978 F.3d 693 (9th Cir. 2020) …………………. 24, 44

*United States v. Ansberry*, 976 F.3d 1108 (10th Cir. 2020) ……………………... 44

*United States v. Armas,* 712 Fed.Appx. 923 (11th Cir. 2017) …………………… 11

*United States v. Arnaout*, 431 F.3d 994 (7th Cir. 2005) …………………….….. 34, 42

*United States v. Awan*, 607 F.3d 306 (2d Cir. 2010) … 25, 30, 34, 36, 38, 40, 42, 44

*United States v. Blake*, 868 F.3d 960 (11th Cir. 2017) …………………………..… 11

*United States v. Chandia* (*Chandia I*), 514 F.3d 365
(4th Cir. 2008) …………………………………………. 23, 24, 28, 30, 36, 37, 47

*United States v. Chandia*, 395 F. App'x 53 (4th Cir. 2010) ………………..…… 35

iv

**Page**

*United States v. Christianson*, 586 F.3d 532 (7th Cir. 2009) ……………….... 35

*United States v. Corte*, SDFL Case No. 11-Cr-60123-Dimitrouleas
(S.D. Fla. Sept. 9, 2011) ……………………………………………………… 51

*United States v. Fidse,* 862 F.3d 516 (5th Cir. 2017) ………………… 34, 35, 42, 47

*United States v. Gladstone*, SDFL Case No. 10-Cr-60195-Dimitrouleas
(S.D. Fla. June 2, 2011) …………………………………………………….. 51

*United States v. Graham*, 275 F.3d 490 (6th Cir. 2001) …………….…· 33, 34, 44

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) …………….…· 24, 35, 44

*United States v. Hayes*, 5 F.3d 292 (7th Cir. 1993) …………………….…· 52

*United States v. Hill*, 643 F.3d 807 (11th Cir. 2011) …………………………….. 15

*United States v. Irey,* 612 F.3d 1160 (11th Cir.2010) (*en banc* ),
*cert. denied,* ⸺ U.S. ⸺, 131 S.Ct. 1813, 179 L.Ed.2d 772 (2011) ………….. 12

*United States v. Jayyousi,* 657 F.3d 1085 (11th Cir.2011) ………………….... 36

*United States v. Jones*, 233 F. Supp. 2d 1067 (E.D. Wis. 2002) …………..…· 26, 52

*United States v. Jordan*, 256 F.3d 922 (9th Cir. 2001) …………………..…· 26

*United States v. Ladson*, 643 F.3d 1335 (11th Cir. 2011) ………………..…… 11

*United States v. Mandhai*, 375 F.3d 1243 (11th Cir. 2004) ………….. 11, 33-36, 42

*United States v. Mohamed*, 757 F.3d 757 (8th Cir. 2014) ……………………· 24, 44

*United States v. Nyhuis*, 8 F.3d 731 (11th Cir. 1993) ……………………..…… 11

*United States v. Parr*, 545 F.3d 491 (7th Cir. 2008) ……………………..…· 23, 33, 34

**Page**

*United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008) ……………….……...…… 19

*United States v. Arcila-Ra*mirez, 16 F.4th 844 (11ᵗʰ Cir. 2021) …..… 20, 41, 43, 46

*United States v. Rodriguez*, 64 F.3d 638 (11th Cir. 1995) ……...…..…… 49, 50, 52

*United States v. Rodriguez,* 2021 WL 3745337 (11ᵗʰ Cir. 2021) ………..…… 11, 14

*United States v. Jose Luis De La Paz Roman*
(SDFL Case No. 19-20004-CR-COOKE ……………………………….…..……51

*United States v. Salim*, 549 F.3d 67 (2d Cir. 2008) …………………………….… 30

*United States v. Sanders*, No. 16-20572-Cr- Altonaga
(S.D. Fla. Feb. 17, 2017) ……………………………………………………… 52

*United States v. Siddiqui*, 699 F.3d 690 (2d Cir. 2012) ………………………….. 35

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) …………..… 24, 25, 28, 35-37

*United States v. Evelio Suarez,* SDFL Case No. 18-CR-20669-RNS-1 ………….. 50

*United States v. Tankersley*, 537 F.3d 1100 (9th Cir. 2008) ………………… 23, 24

*United States v. Van Haften*, 881 F.3d 543 (7th Cir. 2018) ………………..…… 30

*United States v. Williams*, 527 F.3d 1235 (11th Cir. 2008) ………………….... 11

*United States v. Wright*, 747 F.3d 399 (6th Cir. 2014) ……………..…… 24, 42, 44

**Statutes**

Title 18 U.S.C. §1956(h) …………………………………………………………… 50

Title 18 U.S.C. §2332b(g)(5) ……………………... 20, 23-25, 32, 37, 38, 41, 43, 44

**Page**

Title 18 U.S.C. §2332b(g)(5)(A) … 23, 24, 26, 27, 29, 31-33, 36, 37, 39, 43, 45-47

Title 18 U.S.C. §2332b(g)(5)(B) …………………..… 23, 25, 32, 33, 36, 37, 39, 47

Title 18 U.S.C. §2332b(g)(5)(B)(i) …………………………………………… 20

Title 18 U.S.C. §2339A …………………………………………..……….. 28, 44

Title 18 U.S.C. §2339B …………………………………………… 32, 39, 40, 42, 43

Title 18 U.S.C. §2339B(a)(1) ……………………… 3, 13, 21, 23, 25, 27, 33, 46, 48

Title 18 U.S.C. §2339B(a)(2) …………………………….………………….. 3

Title 18 U.S.C. §3553(a) ……………………………………….…...… 4, 12

Title 28 U.S.C. §1291 ……………………………………...……… 1

Title 28 U.S.C. §1294 …………………………………………….........… 1

Title 28 U.S.C. §§3742 …………………………………………….…..… 1

**Rules**

Fed.R.App.P. Rule 4(b) ……………………………………………… 1

Fed.R.App.P. 32(a)(7)(B) …………………………………………... 54

Fed.R.App.P. 32(a)(5) ……………………………………………... 54

Fed.R.App.P. 32(a)(6) …………………………………….........… 54

Fed.R.App.P. 32(f) …………………………………….....................……… 54

**United States Sentencing Guidelines**                                    **Page**

U.S.S.G. §3A1.4(a) and (b) …...… 3, 10, 13, 19-22, 25, 27, 32, 34, 38, 41, 42, 46

U.S.S.G. §§3E1.1 ……………………………………………………… 49

U.S.S.G. §3E1.1(a) and (b) ………………………………….……………… 48

U.S.S.G. §5G1.1(a) ………………………………………….… 10, 14, 48-50, 52

**Law Review Articles and Dictionary Cites, etc.**

George D. Brown, *Punishing Terrorists: Congress, the Sentencing Commission, the Guidelines, and the Courts*, 23 Cornell J.L. & Pub. Pol'y 517, 520 (2014) …………………………………………………………...… 37

James P. McLoughlin, Jr., *Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for Foreign Terrorist Organizations*, 28 Law & Ineq. 51, 54 (2010) ………………………………………………………... 38

*Black's Law Dictionary* (11th ed. 2019) ………………………………...…. 43

*Merriam-Webster Online Dictionary*, https://merriam-webster.com/dictionary/calculated (last visited Oct. 21, 2021) ……………….… 43

*Oxford English Dictionary* (2d ed. 1989) …………………………………... 43

*Random House Webster's College Dictionary* 1042 (2d ed. 1997) ……………. 42

*Webster's Third New International Dictionary Unabridged* 315 (1986) …....… 44

## STATEMENT OF JURISDICTION

This is an appeal as of right taken from a final order in a federal criminal case pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure. This Court has jurisdiction of this appeal pursuant to Title 28, United States Code, Sections 1291, 1294, and §3742, which gives United States Courts of Appeals jurisdiction over all final decisions and sentences of the District Courts of the United States of America.

The notice of appeal was timely filed on February 8, 2022 in the United States District Court for the Southern District of Florida. [D.E. 96/APPX.]

## REFERENCES USED IN THIS BRIEF

Throughout this brief the Appellant, Jonathan Guerra Blanco, is referred to as the "Defendant" or "Mr. Blanco."

Throughout this brief the Appellee, United States of America, is referred to as the "Government."

The Appellant's Appendix is referred to as "APPX."

The trial court docket entries are referred to as "D.E."

The sentencing transcript is referred to as "ST."

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S EMERGENCY MOTION FOR A "KASTIGAR HEARING" WHERE THE GOVERNMENT IMPROPERLY UTILIZED INFORMATION AT THE SENTENCING HEARING THAT THEY OBTAINED FROM THE DEFENDANT'S COMPUTER AFTER HE SUPPLIED THE ACCESS PASSWORDS AT HIS DEBRIEFING, AND WHERE IT WAS AGREED THAT THE "KASTIGAR LETTER" WOULD COVER WHATEVER THE GOVERNMENT OBTAINED FROM ANY DEVICES THE GOVERNMENT MAY ACCESS WITH THE PASSWORDS PROVIDED BY THE DEFENDANT.

II. WHETHER THE TRIAL COURT ERRED IN IMPOSING THE TWELVE (12) LEVEL "TERRORISM" SENTENCING ENHANCEMENT AND A CRIMINAL HISTORY CATEGORY OF VI PURSUANT TO U.S.S.G. §3A1.4(a) AND (b), AND IN OVERRULING DEFENDANT'S OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT IN THAT REGARD.

III. WHETHER THE TRIAL COURT ERRED WHEN, AFTER DETERMINING THAT THE TWELVE (12) LEVEL "TERRORISM ENHANCEMENT" APPLIED IN THIS CASE, THE COURT FAILED TO APPLY THE THREE (3) LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY FROM THE GUIDELINE LEVEL SET BY USSG §5G1.1(a), TO WIT: THE STATUTORY MAXIMUM (20-YEARS), BUT RATHER MERELY CONSIDERED THE ACCEPTANCE AS A DEPARTURE/VARIANCE FACTOR.

## STATEMENT OF THE CASE AND FACTS

### A. Statement of the Case.

On December 3, 2020, the Government filed its Information, therein charging the Defendant with attempting to provide material support or resources to designated

foreign terrorist organizations, in violation of 18 U.S.C. §2339B(a)(1) and (2). [D.E. 19/APPX.]

On December 22, 2020, the Defendant pled guilty to the sole-count of the Information charging him with attempting to provide material support or resources to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1) pursuant to a Plea Agreement [D.E. 26] and a Factual Proffer [D.E. 27]. [Change of Plea Hearing Transcript at D.E. 105 and 108].

On March 10, 2021, the United States Probation Office filed the draft disclosure of the Presentence Investigation Report. [D.E. 35] (*Filed in separate envelope under seal*).

On April 22, 2021, the Defendant filed his Objections to the Presentence Investigation Report, therein in-part objecting to the application of the twelve (12) level so-called "terrorism enhancement" and the criminal history category VI designation that were imposed pursuant to U.S.S.G. §3A1.4(a) and (b). [D.E. 45/APPX.]

On October 12, 2021, the United States Probation Office filed the Final Addendum 1 disclosure of the Presentence Investigation Report. [D.E. 65] (*Filed in separate envelope under seal*).

On January 20, 2022, the Government filed its Response to the Defendant's Objections to the Presentence Investigation Report. [D.E. 73]

On January 24, 2022, the Defendant filed his Reply to the Government's Response to the Defendant's Objections to the Presentence Investigation Report. [D.E. 74]

On January 25, 2022, the Defendant filed his Motion for a Downward Departure and/or Variance pursuant to the Title 18 U.S.C. §3553(a) Factors with Exhibits (*Under Seal*). [D.E. 75/76/77] (*Filed in separate envelope under seal*).

On January 26, 2022, the United States Probation Office filed the Final Addendum 2 disclosure of the Presentence Investigation Report. [D.E. 79] (*Filed in separate envelope under seal*).

On January 26, 2022, the Government filed its Sentencing Memorandum (Response to the Defendant's Motion for Downward Departure or Variance). [D.E. 80]

After receiving the Government's Sentencing Memorandum (Response to the Defendant's Motion for Downward Departure or Variance) [D.E. 80], which included information obtained in violation of the *Kastigar* letter, on January 27, 2022 the Defendant filed his Emergency Motion for a *Kastigar* Hearing [D.E. 82], and that same day the Government filed its response [D.E. 84].   On January 28, 2022, the Court heard argument on the Defendant's motion regarding the *Kastigar* issue just before commencing the sentencing hearing and denied the motion by way of a paperless order entered on January 28, 2022. [D.E. 87]

4

The sentencing hearing was held on January 28, 2022 before the United States District Court Judge Robert N. Scola, Jr., at which time a sentence of one hundred ninety-two (192) months imprisonment and a life term of supervised release was imposed [D.E. 89] (Sentencing Transcript: D.E. 102/APPX.)]. The Judgment was entered on January 31, 2022. [D.E. 93/APPX.]

On February 8, 2022, the Defendant filed his timely Notice of Appeal. [D.E. 96/APPX.]

**B. <u>Statement of the Facts</u>.**

During the period of October of 20l9 through September of 2020, the Islamic State of Iraq and al-Sham ("ISIS") was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, and the Defendant knew that ISIS was a designated foreign terrorist organization, that ISIS engages and has engaged in terrorist activity and that the ISIS engages and has engaged in terrorism.

ISIS members use social media applications, video-sharing sites, blogs and other internet-based sites and applications to distribute their official communications inexpensively, safely, and broadly. In addition, ISIS and other foreign terrorist organizations use these online tools to communicate (publicly and privately) with sympathizers and potential recruits, and to distribute their respective messages to legitimate media outlets, in order to draw attention to the organizations, recruit new

members, raise money, and promote violent jihad, all in an effort to carry out the terrorism-related goals of the organizations.

Due to ISIS's territorial and key personnel losses, official ISIS media publications have waned and the organization has become more reliant on its worldwide supporters. As a result, unofficial ISIS media networks have emerged, and function as a decentralized network to increase the dissemination of pro-ISIS messages and propaganda.

Since 2019, groups such as ISIS Media Network 1 ("IMNl ") and ISIS Media Network 2 ("IMN2") have fulfilled this role, operating on SMPl and other encrypted platforms to produce and spread ISIS videos, instructional guides, graphics, and related media which incite and equip primarily Spanish-speaking followers to conduct operational attacks in support of ISIS.  The Government alleged that the Defendant directed and coordinated the efforts of IMNI and IMN2. While IMNl and IMN2 focus on producing Spanish-translated ISIS media, they also coordinated translations into various other languages, including English, French, German, and Indonesian.

ISIS often uses communication platforms that feature end-to-end encryption, which ensure that only the sender and recipient of a message have the ability to view the content of communications. Encrypted applications such as Social Media Platform I ("SMP I"), Social Media Platform 2 ("SMP2"), and Social Media

6

Platform 3 ("SMP3") allow ISIS members to avoid detection when spreading propaganda, recruiting others, and communicating attack planning information.

The Government asserted that the Defendant consistently uses virtual private networks ("VPN"s) and accesses internet services through TOR in order to obfuscate his true location and other personally identifying information. The Government also asserted that in conversations in these encrypted applications, the Defendant also instructed members of his ISIS network in these practices to improve their ability to operate on behalf of ISIS without detection. Specifically, the Government alleged that the Defendant recommended the use of a particular encryption software and type of computer hardware to conceal internet activity. These items, the software and the precise type of recommended hardware were found during the search warrant executed at the Defendant's residence. The search also led to the discovery of a hand drawn ISIS flag concealed beneath the mattress in the Defendant's room.

Further, the Government asserted that when the Defendant identified an ISIS sympathizer with foreign language ability on SMPl, he would attempt to recruit and maintain communication with that user by creating new accounts for private discussion, or by requesting the user create additional accounts to share with him.

It was the position of the Government that the Defendant took up ISIS' call for its supporters to provide services in online media operations on its behalf; that he attempted to provide services to ISIS; that the Defendant "recruited" FBI Online

Covert Employees (OCE's) to help translate and disseminate ISIS media for IMNl; that the Defendant initially identified and contacted individuals that he pursued romantically, and that the Defendant recruited persons in an attempt to provide the services of more broadly disseminating pro-ISIS material from in or around October 2019 through on or about September 11 , 2020.

The Government asserted that on or about 5 December 2019, the Defendant had posted a graphic to a group in SMP2 titled "Preview from [IMNl] - AL ANDALUZIA (SPAIN)," and that the graphic featured one image of two armed jihadists, and that approximately two days thereafter the Defendant posted a graphic through IMNl which threatened terrorist attacks in Spain and urged supporters to take up arms for ISIS.

Additionally, the Government asserted in-part:

On or about 8 February 2020, IMNl produced and disseminated a pro-ISIS video titled "Called to Islam," featuring a Spanish-language narrative threatening non-believers to convert to Islam. The "stock" video clips used in the video (as well as the earlier mentioned videos) were from a stock footage subscription service purchased by the Defendant; on or about 10 February 2020, the Defendant posted to the IMNl SMPl group a document titled "Open Source Jihad 2 -[IMNl]- La mas poderosa maquina de chapear - Consejos paranuestr@s herman@s ... ," which translates in salient part to "The Ultimate Mowing Machine." The document

provided Spanish-translated encouragements and instructions on how to effectively conduct a vehicle attack against pedestrian targets. The English-language version of the document was previously released in a 2010 publication of AQAPs Inspire Magazine, the Government alleged that the Defendant's IMNl-branded version provided a Spanish language translation for broader dissemination and included original content with instructions, multi-layered encryption applications, and other sophisticated tradecraft to avoid detection by authorities, and that on or about 20 December 2019, the Defendant produced and coordinated the dissemination of an IMNI 1 video which threatened and encouraged terrorist attacks in Madrid, Spain, on behalf of ISIS. The video, which was widely reported by Spanish news outlets, included video footage of Christmas celebrations at a landmark public square in Madrid. The video featured narration and subtitles which stated, among other things, "don't let them celebrate in peace," and "kill them, give them jihad!" As a result of the video's release, a planned concert of Venezuelan musicians at the public square was cancelled, citing the terrorist threat. Video analysis confirmed that certain audiovisual characteristics of the IMNI 1 video matched those downloaded from a subscription service by the Defendant in 2019.

a. *The sentencing hearing*.

With regard to the *Kastigar* issue, at the sentencing hearing the Court found that the information the Government received from the Defendant's computer after

he had supplied the passwords pursuant to the *Kastigar* letter at a debriefing came within the exception in the letter for statements concerning violent acts or violence in any form.  This was in spite of the fact that it was clearly understood between the defense and the Government, prior to the Government's filing its Sentencing Memorandum (Response to the Defendant's Motion for Downward Departure or Variance) [D.E. 80], that this exception would only apply to violent acts or violence that he, the Defendant, had himself participated in, not violent acts that he did a video about.

Further, at the sentencing hearing held on January 28, 2022, the trial court overruled the Defendant's objection to the application of the twelve (12) level/criminal history category VI enhancement pursuant to U.S.S.G. §3A1.4(a) and (b), without requiring the Government to sufficiently prove by a preponderance of the evidence that said enhancement applied.

With regard to the application of the three (3) level reduction for acceptance of responsibility, the trial court denied the Defendant's request to apply the three (3) level reduction for acceptance of responsibility from the guideline level set by U.S.S.G. §5G1.1(a), to wit: the statutory maximum (20-years). In imposing sentence, the trial court did note that it was considering the Defendant's acceptance of responsibility as a variance factor.

## STANDARD OF REVIEW

*Kastigar* claims are reviewed deferentially and the appellate court will affirm the district court's decision unless it is clearly erroneous. *United States v. Nyhuis*, 8 F.3d 731, 741 (11th Cir. 1993).   Under "clear error" review, the district court's decision will be affirmed "so long as it is plausible in light of the record reviewed in its entirety." *United States v. Ladson*, 643 F.3d 1335, 1341 (11th Cir. 2011); *United States v. Daniel Rodriguez,* 2021 WL 3745337 (11th Cir. 2021).

Questions of law concerning guidelines applications are reviewed *de novo*. *United States v. Williams*, 527 F.3d 1235, 1247-48, 1249 (11th Cir. 2008). A challenge to the application of the Sentencing Guidelines is a mixed question of law and fact. The district court's findings of fact are reviewed for clear error, while its application of the Guidelines to those facts is reviewed *de novo*. *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004); *United States v. Armas,* 712 Fed.Appx. 923 (11th Cir. 2017).

Substantive reasonableness of a sentence is reviewed for abuse of discretion. *United States v. Blake*, 868 F.3d 960, 978 (11th Cir. 2017). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper

factors." *Id.* The proper factors for the district court to consider are set out in 18 U.S.C. §3553(a). *Id.*

Further, the reasonableness of a sentence is reviewed under a deferential abuse of discretion standard. *Gall v. United States,* 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007). Under the abuse of discretion standard, a sentence will be affirmed unless the court finds that the district court has made a clear error of judgment. *United States v. Irey,* 612 F.3d 1160, 1189 (11th Cir.2010) (*en banc* ), *cert. denied,* —— U.S. ——, 131 S.Ct. 1813, 179 L.Ed.2d 772 (2011).

## SUMMARY OF THE ARGUMENT

I.     The Government violated the *Kastigar* letter and when the Defendant objected to the Government's use of the immunized information to support the terrorism enhancement, the trial court erred in overruling that objection.

Specifically, the court erred in its determination that the exception noted in the *Kastigar* letter for statements concerning violent acts or violence in any form applied in this instance.  This determination was in spite of the fact that it was clearly understood between the defense and the Government that this exception would only apply to violent acts or violence that he, the Defendant, had himself participated in, not violent acts that he did a video about or a video or publication that called for violent acts.  Therefore, the information that the Government obtained (information concerning a Spanish judge) by accessing the Defendant's computer after the

12

Defendant had supplied the passwords pursuant to the *Kastigar* letter's grant of immunity, was clearly a *Kastigar* violation.    Further, the district court's determination that the Government could use the tainted evidence to support their argument that the "terrorism enhancement" applied was clearly erroneous.

II.    The trial court erred in imposing a twelve (12) level sentencing enhancement for an offense that was a felony that involved, or was intended to promote a federal crime of terrorism pursuant to U.S.S.G. §3A1.4(a), and in overruling defendant's objection to the presentence investigation report in that regard.

Although, the Defendant did enter his plea of guilty to an offense that charges him with attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. §2339B(a)(1), that does not *per se* or automatically invoke the extraordinarily harsh twelve (12) level enhancement provided for in U.S.S.G. §3A1.4(a), and the criminal history category of VI.  The Government failed to prove by a preponderance of the evidence that said enhancement applied, nor was there any other sufficient evidence presented to support the application of that enhancement.

 Additionally, the trial court's findings to support the twelve (12) level terrorism enhancement were insufficient and relied upon *Kastigar*-tainted information.

III.    The trial court erred when, after determining that the twelve (12) level "terrorism enhancement" applied in this case, the court failed to apply the three (3) level reduction for acceptance of responsibility from the guideline level set by U.S.S.G. §5G1.1(a), to wit: the statutory maximum (20-years), thereby making the reduction for acceptance meaningless and the ultimate sentence imposed procedurally and substantively unreasonable.

## **ARGUMENT**

### **I.**

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S EMERGENCY MOTION FOR A "KASTIGAR HEARING" WHERE THE GOVERNMENT IMPROPERLY UTILIZED INFORMATION AT THE SENTENCING HEARING THAT THEY OBTAINED FROM THE DEFENDANT'S COMPUTER AFTER HE SUPPLIED THE ACCESS PASSWORDS AT HIS DEBRIEFING, AND WHERE IT WAS AGREED THAT THE "KASTIGAR LETTER" WOULD COVER WHATEVER THE GOVERNMENT OBTAINED FROM ANY DEVICES THE GOVERNMENT MAY ACCESS WITH THE PASSWORDS PROVIDED BY THE DEFENDANT.

In *Kastigar*, the Supreme Court held that when the government wishes to prosecute a defendant who has given self-incriminating testimony under a grant of immunity, to avoid a Fifth Amendment violation, the prosecution is prohibited from "using the compelled testimony in any respect" that would "lead to the infliction of criminal penalties on the witness." *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).  In *United States v. Daniel Rodriguez,* 2021 WL

14

3745337 (11th Cir. 2021), this Court stated that when presented with a *Kastigar* claim, the Court must "determine whether any of the evidence used against the defendant was in any way derived from his compelled immunized testimony." *United States v. Hill*, 643 F.3d 807, 877 (11th Cir. 2011). This Court also noted that the Government bears the burden of demonstrating that all of the evidence it obtained and used against the Defendant was untainted by immunized testimony. *Id.*

In the case-at-bar, most respectfully, the lower court's determination that the exception noted in the *Kastigar* letter for statements concerning *violent acts or violence in any form* applied in this instance was incorrect. This determination was in spite of the fact that it was clearly understood between the defense and the Government, prior to the Government's filing its Sentencing Memorandum (Response to the Defendant's Motion for Downward Departure or Variance) [D.E. 80], that this exception would only apply to violent acts or violence that he, the Defendant, had himself participated in, *not violent acts that he did a video about or a video or publication that called for violent acts.*

The fallacy of the Court's reasoning will be demonstrated by posing a hypothetical example. Suppose a book editor was hired to edit or translate a book that depicted violent acts was arrested and charged with a violent crime and subsequently decided to cooperate and was debriefed pursuant to a *Kastigar* letter

15

that had an exception for violence in any manner. During the debriefing the book editor had told the agents that he had in-fact edited or translated that book depicted violent acts. Does that mean that the book and its violent contents was an exception to the *Kastigar* letter and that it could be introduced at his sentencing hearing to enhance his sentence by showing that he had edited or translated the book that described violent acts?

It is submitted that the same situation is presented in this case. Specifically, during his debriefing the Defendant had told the agents about certain videos and publications in which he had inserted sub-titles or had translated that included violent depictions and statements to engage in violent acts, however nothing he told them concerned any violent acts that he himself had engaged in. Therefore, that information came within the grant of immunity and did not fall within any exception to that immunity. Further, it should be noted that prior to the debriefing the Government as well as counsel were well-aware that the videos that he edited and in which he inserted sub-titles as well as publications he had produced and/or translated included violent depictions and statements to engage in violent acts. Therefore, the exception in the *Kastigar* letter was actually an invitation for the Government to utilize *anything* he told them during the debriefing.

Here, the district court's decision that there was no *Kastigar* violation was clearly erroneous because the tainted evidence did not fall within the "violence"

16

exception in the *Katigar* letter.  Accordingly, the district court's determination that the Government could use the tainted evidence to support their argument that the "terrorism enhancement" applied was likewise clearly erroneous.

With regard to the Government's burden to demonstrate that all of the evidence it obtained and used against the Defendant (at his sentencing hearing) was untainted by immunized testimony, the Government presented nothing, other than an empty representation made to the Court by the prosecutor.

With regard to the tainted information that the Defendant asserted was a *Kastigar* violation, the January 28, 2022 Sentencing Transcript at Page 14, Lines 6-25; Page 15, Lines 1-7, reflects the following:

> MS. GILBERT [The Prosecutor]: Sorry. An individual who Guerra Blanco had been conspiring with was arrested in Spain. Prior to the arrest, Muntasir Media had disseminated a video threatening a judge presiding over counter-terrorism cases. After the arrest, *Guerra Blanco edited the video including English subtitles and stating, you will die, Jose De La Mata, the actual name of the Spanish judge.  So the only part of that paragraph that we knew after accessing the computer was that Guerra Blanco edited it. We knew about the video.* It was publicly reported. Obviously, our position is we did not breach the agreement, that as the Court initially said, *this was additional, a violent act by the defendant putting the judge's name and address -- or, excuse me, adding the name. The address was in there, but putting the subtitles in there you will die over his picture.* The only other additional piece that, if the Court grants their motion, that would come out of my pleading would be, *during the debrief, the defendant admitted to disseminating all three of the open source jihad articles*, but it seems like that's not going to be contested today because Ms. Davide just said it. *And then in the search of his computer, we found his pledge to ISIS.  Other than that, Your Honor, all of the other evidence is known to the agents and the investigation*

17

*prior to the debriefs, prior to unlocking the computer.* But again, our position is, the Court's absolutely right, we did not breach the agreement. This was violence.

The Defendant was seriously prejudiced by the information regarding the Spanish judge as demonstrated by the Court's comments at Sentencing Transcript, Page 9, Lines 14-17:

> THE COURT: Okay. And if he translates something and puts it in Spanish and says that this judge should be killed and gives the home address of the judge, that's not participating in violence?

Page 17, Lines 23-25; Page 18, Lines 1-16:

> THE COURT: And without the information that the government obtained after he gave you the passwords, how would you establish that he knew or had something to do with the original posting?
> MS. GILBERT: It's only circumstantial evidence, Your Honor.

It is submitted that the principal piece of evidence that the trial court utilized to find that the "terrorism enhancement" applied concerned the Spanish judge material. The significance of this will be put in context within the argument on the "Terrorism Enhancement" in Issue II set forth below.

18

## II.

THE TRIAL COURT ERRED IN IMPOSING THE TWELVE (12) LEVEL "TERRORISM" SENTENCING ENHANCEMENT AND A CRIMINAL HISTORY CATEGORY OF VI PURSUANT TO U.S.S.G. §3A1.4(a) AND (b), AND IN OVERRULING DEFENDANT'S OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT IN THAT REGARD.

When determining a defendant's sentence, a district court must first accurately determine the defendant's sentencing guidelines range. *Peugh v. United States*, 133 S. Ct. 2072, 2080 (2013); *Gall v. United States*, 552 U.S. 38, 49 (2007). "A district court that 'improperly calculat[es]' a defendant's Guidelines range...has committed a 'significant procedural error.' " *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Gall*, 522 U.S. at 51); *see also United States v. Pugh*, 515 F.3d 1179, 1189-90 (11th Cir. 2008) (the failure to correctly calculate the guidelines range constitutes reversible error).

These principles apply regardless of whether the district court imposes a sentence within the guidelines range or outside of the range. *See Peugh v. United States*, 133 S. Ct. at 2083 ("That a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing. Indeed, the rule that an incorrect Guidelines calculation is procedural error ensures that they remain the starting point for every sentencing calculation in the federal system.").

19

In the trial court, the Defendant filed his objection to paragraph 54 of the Presentence Investigation Report which states, "Victim Related Adjustment: Pursuant to § 18 U.S.C. §2332b(g)(5), because the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct and is an offense enumerated in 18 U.S.C. §2332b(g)(5)(B)(i), it qualifies as a "federal crime of terrorism." The instant offense of conviction of conspiracy to provide material support and resources to a foreign terrorist organization is a Class C felony offense, in violation of 18 U.S.C. §2339B(a)(1). Because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, 12 levels are added, § 3A1.4(a)."  Further, the Defendant objected to Paragraph 64 of the Presentence Investigation Report: "Criminal History Computation" that states, "because the offense involved or was intended to promote, a federal crime of terrorism, the criminal history category is VI, §3A1.4(b). [D.E. 35] (*Filed in separate envelope under seal*).

The trial court overruled the Defendant's objections to paragraphs 54 and 64 of the Presentence Investigation Report.

It is respectfully submitted that the Defendant's criminal conduct in the case at bar does not warrant the application of U.S.S.G. §3A1.4 as discussed in great detail below.  (This Honorable Court has recently addressed this sentencing enhancement in the case of *United States v. Francisco Joseph Arcila Ramirez*,

16 F.4th 844 (11th Cir. 2021), where this Court vacated Arcila Ramirez' sentence and remanded the case for resentencing and fact findings.)

Although, the Defendant did enter his plea of guilty to an offense that charges him with attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. §2339B(a)(1), that does not *per se* or automatically invoke the extraordinarily harsh twelve (12) level enhancement provided for in U.S.S.G. §3A1.4(a) and a the criminal history category of VI.

As set forth in the Factual Proffer, in-part the function of the Defendant in this criminal conduct was to assist unofficial ISIS media networks to increase the dissemination of pro-ISIS messages and propaganda. Specifically, the Defendant assisted in the production of Spanish-translated ISIS media and coordinated translations into various other languages, including English, French, German, and Indonesian. When the Defendant identified an ISIS sympathizer with foreign language ability, he would attempt to recruit and maintain communication with that person by creating new accounts for private discussions, or by requesting that the user create additional accounts to share with the Defendant. The Defendant would use virtual private networks ("VPN"s) and would access the internet through "TOR" in order to obfuscate his true location and other personally identifying information. Essentially, the Defendant took up ISIS' call for its supporters to provide services in

online media operations on its behalf, and the Defendant provided such services to ISIS in that regard.

The videos utilized by the Defendant were from stock video clips from a stock footage subscription service purchased by the Defendant. Additionally, some of the propaganda materials were translations of articles previously disseminated in English outlets years before the Defendant's conduct. However, in December of 2019 the Defendant did produce and coordinate the dissemination of an IMNI1 video which threatened and encouraged terrorist attacks in Madrid, Spain, on behalf of ISIS. Video analysis confirmed that certain audiovisual characteristics of that video matched those downloaded from a subscription service by the Defendant in 2019.

First, an overview of the requirements for the correct application of the "terrorism enhancement" pursuant to U.S.S.G. §3A1.4 is set forth below. In that regard, the Defendant does not fulfill said requirements and the imposition of the "terrorism enhancement" would not be appropriate in this instance.

**A.** *Distinguishing the terrorism enhancement from the elements of the underlying crime.*

The terrorism enhancement, U.S.S.G. § 3A1.4, imposes a significantly harsher punishment on those who commit certain types of crimes of terrorism. The enhancement increases a defendant's offense level to a minimum of 32 and designates a defendant's criminal history category as Category VI, regardless of whether the defendant has previously committed a crime.

trigger this enhancement, the government must prove elements *distinct from* those of the crime of conviction. Specifically, that the offense committed "involved, or was intended to promote, a federal crime of terrorism." *Id.*

The term "federal crime of terrorism" is defined as "an offense that is ... calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," 18 U.S.C. § 2332b(g)(5)(A), and that "is a violation of" certain enumerated statutes, 18 U.S.C. § 2332b(g)(5)(B). Both parts of §2332b(g)(5) must be satisfied for the enhancement to apply. *See United States v. Tankersley*, 537 F.3d 1100, 1113 (9th Cir. 2008); *United States v. Parr*, 545 F.3d 491, 504 (7th Cir. 2008).

The material support statute, by contrast, requires proof that a defendant attempted to, conspired to, or did provide "material support or resources to a foreign terrorist organization," knowing "that the organization is a designated terrorist organization" or "that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a)(1). It is possible for a defendant to provide material support to a terrorist group in violation of 18 U.S.C. § 2339B(a)(1) without intending that the support or resources would influence, affect, or retaliate against government conduct to satisfy the first prong of the definition of federal crime of terrorism. *See, e.g.*, *United States v. Chandia* (*Chandia I*), 514 F.3d 365, 376 (4th Cir. 2008).

23

The enhancement, therefore, does not automatically apply to all material support offenses. Congress created this distinction in order to punish certain dangerous terrorists more severely than persons who committed non-violent crimes. *See Tankersley*, 537 F.3d at 1113. Thus, to warrant a substantial increase in punishment pursuant to the terrorism enhancement, a defendant must have the requisite intent necessary to satisfy the definition of federal crime of terrorism, beyond the intent required to establish a violation of the material support statute.

**B.** ***The terrorism enhancement requires examining the specific intent with respect to the offense of conviction.***

Circuits that have addressed the issue, hold that § 2332b(g)(5)(A) imposes a specific intent requirement. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 148–49 (4th Cir. 2014); *United States v. Wright*, 747 F.3d 399, 408 (6th Cir. 2014); *United States v. Mohamed*, 757 F.3d 757, 760 (8th Cir. 2014); *United States v. Stewart*, 590 F.3d 93, 138 (2d Cir. 2009) ("[C]omission of a federal crime of terrorism ... incorporates a specific intent requirement.") (quoting *Chandia I*, 514 F.3d at 376.

In *United States v. Alhaggagi*, 978 F.3d 693 (9th Cir. 2020), where the Ninth Circuit held that the district court abused its discretion in applying the terrorism enhancement and vacated Alhaggagi's sentence and remanded the case for a resentencing hearing, the court agreed with this interpretation of § 2332b(g)(5) and agreed that there is a specific intent requirement. As the Second Circuit explained, § 2332b(g)(5) "does not require proof of a defendant's particular motive," which is

24

"concerned with the rationale for an actor's particular conduct." *United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010). Rather, " '[c]alculation' is concerned with the object that the actor seeks to achieve through planning or contrivance." *Id.* The appropriate focus thus is not "on the defendant, but on his 'offense,' asking whether it was calculated, *i.e.*, planned—for whatever reason or motive—to achieve the stated object." *Id.* In other words, 2332b(g)(5) "is better understood as imposing a requirement 'that the *underlying felony* [be] calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.' " *Id.* (quoting *Stewart*, 590 F.3d at 138).

The analysis as to whether the terrorism enhancement applies requires an examination of the evidence to see if it supports a finding that a defendant's conduct meets the definition of federal crime of terrorism required for § 3A1.4 to apply.

**C**. *The terrorism enhancement does not apply in this case.*

It is clear that the crime of conviction would satisfy the second prong of the definition of federal crime of terrorism. The crime of conviction here—attempt to provide material support in violation of 18 U.S.C. § 2339B(a)(1)—is one of the enumerated statutes in 18 U.S.C. §2332b(g)(5)(B).

The remaining question is whether the Defendant's conduct satisfies the first prong: whether his attempt to provide material support to a terrorist organization by providing translation services, internet sites, and opening social media accounts, etc.

was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). It is the government's burden to prove that element by clear and convincing evidence, because application of the enhancement drastically increases the guidelines range. *See United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001).

Additionally, it would be erroneous to apply the terrorism enhancement by centering the analysis on the terrorist organization, rather than the Defendant's conduct or mental state. The enhancement specifically requires the district court to consider the latter, whereas the offense itself implicates the former.

### i. *Calculated to influence or affect the conduct of government by intimidation or coercion.*

Without conceding such, the factual proffer asserts that the Defendant coordinated and directed activities of certain media networks, focusing on producing Spanish-translated ISIS media as well as translations into various other languages. Additionally, that the Defendant used encrypted applications and virtual private networks to hide his personal information and location. It is asserted that when he identified an ISIS sympathizer with foreign language ability on the private network, he would attempt to maintain communication with that user by creating new accounts for private discussions. The Defendant recruited others to help translate and disseminate ISIS media. ISIS had called for its supporters to provide services in

26

online media operations on its behalf, and the Defendant attempted to and did provide such services to ISIS.

The conduct of the Defendant was <u>not</u> calculated to influence or affect government conduct by intimidation or coercion just because he knew he was providing "support" to ISIS sympathizers and knew that ISIS is a terrorist organization.  It is simply wrong to conclude that, since any support given to a terrorist organization ultimately inures to the benefit of its terrorist purposes, that this is sufficient to apply the terrorist enhancement. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 29, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010).  This reasoning, that since any support given to a terrorist organization ultimately inures to the benefit of its terrorist purposes, misses the mark in the context of the terrorism enhancement because it fails to properly differentiate between the intent required to sustain a material support conviction pursuant to 18 U.S.C. §2339B(a)(1) and the intent required to trigger the terrorism enhancement pursuant to U.S.S.G. §3A1.4.

As explained above, the material support statute requires only that the defendant have "knowledge of the foreign group's designation as a terrorist organization or the group's commission of terrorist acts." *Id.* at 12, 130 S.Ct. 2705. Section 3A1.4, in contrast, requires the defendant's specific intent that the offense "influence or affect the conduct of government by intimidation or coercion." 18 U.S.C. § 2332b(g)(5)(A).

27

In cases involving violent acts of terrorism, specific intent is relatively easy to identify, either from the statements or admissions of the defendant or the nature of the offense. But, where the conduct underlying the conviction does not involve violent terrorist acts, as is true in many material support cases, those "acts cannot, standing alone, support application of the terrorism enhancement." *Chandia I*, 514 F.3d at 376. In such cases, evidence beyond the facts underlying the offense conduct must reflect that the defendant had the enhancement's requisite intent.

The Second Circuit's decision in *United States v. Stewart* is instructive. 590 F.3d at 93. In *Stewart*, defendant Mohammed Yousry served as a translator between a convicted terrorist and his legal team. Some of these translated messages concerned the terrorist's support for the termination of a cease-fire and a return to violence between al-Gama'a, a terrorist organization in Egypt, and the Egyptian government. *Id.* at 103–07. Yousry was ultimately convicted of providing and concealing material support to that conspiracy in violation of 18 U.S.C. § 2339A. *Id.* at 108. The district court, however, did not apply the terrorism enhancement to Yousry's conviction, finding that "he did not act with the requisite state of mind." *Id.* at 136. On appeal, the Second Circuit agreed. *Id.* at 136–37. The court held that, despite Yousry's proximity to the messaging scheme and the scheme's role in benefiting al-Gama'a, the government failed to show that Yousry sought to influence or affect the conduct of government. *Id.* at 138.

28

Similarly, in the case-at-bar, the Defendant's actions—even though the media accounts inured to the benefit of ISIS and its terrorist purpose in the long run— the Defendant's actions are not accompanied by the necessary mental state to trigger the enhancement. A district court would abuse its discretion if it were to conclude otherwise.

Further, the actions of the Defendant do not necessarily show that he understood the purpose of the internet accounts was to bolster support for ISIS's terrorist attacks on government entities.

Unlike conspiring to bomb a federal facility, planning to blow up electrical sites, attempting to bomb a bridge, or firebombing a courthouse—all of which have triggered the enhancement—opening a media account or internet network does not inherently or unequivocally constitute conduct motivated to "affect or influence" a "government by intimidation or coercion." 18 U.S.C. § 2332b(g)(5)(A).  In other words, one can open a media account for a terrorist organization without knowing how that account will be used; whereas it is difficult to imagine someone bombing a government building without knowing that bombing would influence or affect government conduct. The "cause and effect" reasoning dictates that translating or opening media accounts—and the effect—influencing government conduct by intimidation or coercion—are much too attenuated to warrant the automatic triggering of the enhancement.  Instead, to properly apply the enhancement, a court

29

must determine that a defendant knew the media accounts were to be used to intimidate or coerce government conduct. *703 *See Awan*, 607 F.3d at 317–18; *Chandia I*, 514 F.3d at 376.

**ii**. *Calculated to retaliate against government conduct.*

Further it cannot be shown that in translating and opening the media accounts, the Defendant had the specific intent to retaliate against government conduct.

Cases applying the retaliation prong rely on evidence that the defendant intended to respond to specific government action. For example, in *United States v. Van Haften*, the defendant, a registered sex offender, was apprehended while travelling to Turkey to try to join ISIS. 881 F.3d 543 (7th Cir. 2018). His Facebook posts and notes reflected his belief that the United States government had ruined his life by placing him on the sex offender registry. *Id.* at 544–45. The district court concluded that he "sought to join ISIS, at least in part, because he wanted to retaliate against the government for its treatment of Muslims in general and specifically for its treatment of [the defendant] as a designated sex offender." *Id.* at 544. *See also United States v. Salim*, 549 F.3d 67, 76–77 (2d Cir. 2008) (finding the retaliation prong satisfied where the defendant's attack "was in retaliation for judicial conduct denying [the d]efendant's applications or substitution of counsel"); *United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 198 (D.D.C. 2018) (finding that the defendant

30

"joined the attack [on the U.S. Special Mission in Benghazi] in order to retaliate against the U.S. government for its presence in Libya.").

In the case-at-bar, the Defendant's actions do not satisfy the retaliation prong. While providing support to terrorist groups inevitably strengthens their ability to retaliate against government conduct, it is not enough that such support will generally "lead[ ] to" more acts of terrorism. That reasoning does not distinguish between conduct that satisfies the material support statute and the specific intent required to establish calculated retaliation for purposes of the terrorism enhancement. The proper analysis is to look to whether the offense itself is "calculated ... to retaliate against government conduct." 18 U.S.C. §2332b(g)(5)(A).

In this case, it cannot be said that the Defendant committed the offense with the specific intent to retaliate against government conduct. Generally assisting a terrorist organization with media does not necessarily demonstrate an intention that the translations and media accounts are to be used to retaliate against a government, or sought revenge on any particular government or for any specific government conduct.

In the case-at-bar, the Defendant does not fulfill the requirements of the "terrorism enhancement" as discussed above, and the imposition of said enhancement would not be appropriate in this instance.

Stated again in a slightly different manner, please see the following:

31

• U.S.S.G. §3A1.4 entitled "Terrorism" provides,

(a) If the offense is a felony that involved, or was intended to promote, <u>a federal crime of terrorism</u>, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

(b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

Application Note 1 then directs the reader to 18 U.S.C. § 2332b(g)(5) to determine the definition of a "federal crime of terrorism."

• 18 U.S.C. §2332b(g)(5) <u>defines</u> a "<u>federal crime of terrorism</u>," as
(5) the term "Federal crime of terrorism" means an offense that—

(A) *is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct*; (<u>Emphasis supplied</u>.) **and**

(B) is a violation of—

(i) … 2339B (relating to providing material support to terrorist organizations) …

The § 3A1.4 terrorism enhancement applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). The term "federal crime of terrorism" as used in § 3A4.1 "has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." *See* U.S.S.G. § 3A4.1 cmt. n.1. Under § 2332b(g)(5), an offense qualifies as a federal crime of terrorism if two distinct requirements are met: (1) the offense is a violation of one or more enumerated statutory provisions, **and** (2) *the offense "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." (<u>Emphasis supplied</u>.) See* § 2332b(g)(5)(A), (B). In order for

the sentencing court to apply a terrorism enhancement, the government must show by a preponderance of the evidence that the two requirements of § 2332b have been met. *United States v. Mandhai*, 375 F.3d 1243, 1247–48 (11th Cir. 2004) (citing *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001).

In the case-at-bar, the Defendant entered his plea of guilty to the offense of providing material support to a terrorist organization, in violation of 18 U.S.C. §2339B(a)(1), therefore 18 U.S.C. §2332b(g)(5)(**B**) is fulfilled.  However, it is clear that with regard to 18 U.S.C. §2332b(g)(5)(**A**), the definition of the term "Federal crime of terrorism" is *not* fulfilled.

Specifically, it cannot be said that the conduct of the Defendant was "*calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct*." The identification of a qualifying statutory provision alone does not constitute "identify[ing] a federal crime of terrorism," because a "[f]ederal crime of terrorism means an offense that" not only is a violation of one of the enumerated statutory provisions listed in §2332b(g)(5)(B), but also "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." § 2332b(g)(5)(A), (B). "The definition is stated in the conjunctive, so both requirements must be met." (Emphasis supplied.) *Parr*, 545 F.3d at 504.

Courts have recognized that the structure of § 3A1.4 establishes two bases for applying the enhancement. *See Fidse I*, 778 F.3d at 481; *United States v. Arnaout*, 431 F.3d 994, 1001–03 (7th Cir. 2005); *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001). The first—if the offense "involved" a federal crime of terrorism—has been understood to apply when "a defendant's offense or relevant conduct *includes* a federal crime of terrorism." *Arnaout*, 431 F.3d at 1001 (emphasis added); *accord United States v. Parr*, 545 F.3d 491, 504 (7th Cir. 2008); *Mandhai*, 375 F.3d at 1247–48; *Graham*, 275 F.3d at 516. Thus, "an offense 'involves' a federal crime of terrorism only if the crime of conviction is itself a federal crime of terrorism," (Emphasis supplied.) *Parr*, 545 F.3d 491 at 504, or if the "relevant conduct includes such a crime," *United States v. Awan*, 607 F.3d 306, 313–14 (2d Cir. 2010).

Alternatively, the enhancement applies "[i]f the offense ... was intended to promote a federal crime of terrorism." U.S.S.G. § 3A1.4(a); *accord Arnaout*, 431 F.3d at 1001. As the Sixth Circuit has explained, "[a] defendant who intends to promote a federal crime of terrorism has not necessarily completed, attempted, or conspired to commit the crime." *Graham*, 275 F.3d at 516. "[I]nstead the phrase implies that the defendant *has as one purpose* of his substantive count of conviction or his relevant conduct *the intent to promote a federal crime of terrorism*." *Id.* (Emphasis supplied.) In such cases, "the terrorism enhancement does not hinge upon

a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation. Rather, it is the defendant's *purpose* that is relevant, and if that *purpose* is to promote a terrorist crime, the enhancement is triggered." *Mandhai*, 375 F.3d at 1248 (Emphasis supplied.) *United States v. Fidse,* 862 F.3d 516 (5th Cir. 2017).

The phrase "calculated to influence or affect the conduct of government" has been interpreted as imposing a specific intent requirement. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 148–49 (4th Cir. 2014); *United States v. Siddiqui*, 699 F.3d 690, 709 (2d Cir. 2012); *United States v. Chandia*, 395 F. App'x 53, 54, 60 (4th Cir. 2010); *United States v. Stewart*, 590 F.3d 93, 138 (2d Cir. 2009); see also *United States v. Christianson*, 586 F.3d 532, 539–40 (7th Cir. 2009) (noting that a court is to consider the defendant's "purpose" or "motive" in committing the offense). *A defendant has the requisite intent if he or she acted with the purpose of influencing or affecting government conduct and planned his or her actions with this objective in mind*. (Emphasis supplied.) *Siddiqui*, 699 F.3d at 709; *Stewart*, 590 F.3d at 137.

In other words, it cannot be shown that the Defendant had the specific intent to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. The first part of the definition of federal crime of terrorism "focuses on the intended outcome of the defendants' unlawful acts-i.e., what the activity was calculated to accomplish, not what the defendants' claimed

35

motivation behind it was." *United States v. Jayyousi,* 657 F.3d 1085, 1115 (11th Cir.2011) (citing *United States v. Mandhai,* 375 F.3d 1243, 1248 (11th Cir.2004) and *United States v. Awan,* 607 F.3d 306, 316–17 (2d Cir.2010) ["Here, whatever Awan's motive might have been in committing the crimes for which he was convicted, commission of crimes listed in § 2332b(g)(5)(B) satisfies the "involved" prong of the terrorism enhancement so long as the government shows by a preponderance of the evidence that Awan had the "specific intent," *Stewart,* 590 F.3d at 138, to commit an offense that was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A)."]

In *United States v. Chandia*, 514 F.3d 365 (4th Cir. 2008), the court declined to infer the required intent from the basic facts that gave rise to the conviction and stated that those facts do not support application of the enhancement, and that unlike in some cases where the enhancement has been applied, the acts underlying the conviction in this case were not violent terrorist acts. Therefore, these acts cannot, standing alone, support application of the terrorism enhancement. The court held that, "Because there has been no factual finding on the intent element, and because the basic facts supporting the conviction do not give rise to an automatic inference of the required intent, we must vacate Chandia's sentence and remand for resentencing."

36

In *United States v. Stewart,* 590 F.3d 93 (2nd Cir. 2009) the court stated, as the Fourth Circuit has recognized, commission of a federal crime of terrorism, which would trigger the "involved" prong of the enhancement, incorporates "a specific intent requirement, namely, that the underlying felony was 'calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.' 18 U.S.C. § 2332b(g)(5)." *United States v. Chandia,* 514 F.3d 365, 376 (4th Cir.2008). So the problem for the government remains: there is no evidence that Yousry himself sought to influence or affect the conduct of a government. The enhancement therefore does not apply under the "involved" prong. *See Leahy,* 169 F.3d at 446.

Clearly, the Defendant's offense conduct was not an activity calculated to "influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."  Again, the defendant does not dispute that he was charged with one of the enumerated offenses in 18 U.S.C. 2332b(g)(5)(**B**). Rather, he argues that the government cannot meet its burden of showing that he intended "to influence or affect the conduct of government" or "retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(**A**).

The Terrorism Enhancement, when applied, ─takes a wrecking ball to the initial Guidelines range. George D. Brown, *Punishing Terrorists: Congress, the Sentencing Commission, the Guidelines, and the Courts*, 23 Cornell J.L. & Pub.

37

Pol'y 517, 520 (2014). As noted above, it functions by both increasing the offense level at least 12 levels and elevating the defendant to the highest Criminal History Category, irrespective of his or her actual criminal history. (It should be noted that in the case-at-bar the Defendant has zero criminal history points.)

Further, this is clearly "a draconian" enhancement. (—U.S.S.G. §3A1.4 is "draconian." James P. McLoughlin, Jr., *Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for Foreign Terrorist Organizations*, 28 Law & Ineq. 51, 54 (2010)).

At this point, the Defendant will discuss the specific standard for application of the enhancement and show that the facts of this case do not meet that standard.

The applicable standard is set forth in *United States v. Awan*, 607 F.3d 306, 313 (2d Cir. 2010). There, the Second Circuit explained that the disjunctive phrase from U.S.S.G. § 3A1.4—if the offense involved, OR was intended to promote, a federal crime of terrorism——makes clear that the predicate offense must either (1) involve 'a federal crime of terrorism' or (2) be intended to promote 'a federal crime of terrorism,' and that each clause has a separate meaning. *Awan*, 607 F.3d at 313. The court noted that a defendant's offense involves 'a federal crime of terrorism' when his offense includes such a crime, *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. §2332b(g)(5), or his relevant conduct includes such a crime. *Id.* at 313-14.

Since Mr. Blanco's conviction is pursuant to 18 U.S.C. §2339B, which is a crime enumerated in §2332b(g)(5)(B), it is only necessary for the Court to find, under that prong, that the Defendant had the ―specific intent to commit an offense that was ― "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." *See id.* at 316-17. ― "Calculation" is concerned with the object that the actor seeks to achieve through planning or contrivance . . . Section 2332b(g)(5)(A) does not focus on the defendant, but on his offense, 'asking whether it was calculated, *i.e.,*, planned—for whatever reason or motive—to achieve the stated objective.' *Id.* at 317.

Alternatively, ― [t]he 'intended to promote' prong applies where the defendant's offense is intended to encourage, further, or bring about a federal crime of terrorism, even though the defendant's own crime of conviction or relevant conduct may not include a federal crime of terrorism. *Id.* at 314. So, even if Mr. Blanco's offense was not ―calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct, the terrorism enhancement may apply if, with his offense, he *intended to promote* another's commission of a crime in § 2332b(g)(5)(B) that was. *See id.* at 314-15. ― [A]n offense is intended to promote 'a federal crime of terrorism' when the offense is intended to help bring about, encourage, or contribute to such a crime. *Id.* at 314.

39

Under both the ― 'involves' or the ― 'intended to promote' prong, then, the terrorism enhancement only applies if the Court finds that Mr. Blanco had some intent in addition to that which was necessary to support his guilty plea (only 'knowledge' is necessary for a conviction under 18 U.S.C. §2339B).

In this case, Mr. Blanco had neither the specific intent to commit a crime that was calculated to influence, affect, or retaliate against a government, nor did he have the intent to promote another's federal crime of terrorism when his guilty plea could rest only on his 'knowledge.'

Mr. Blanco's interest was in the production of translated ISIS propaganda materials and the dissemination thereof.  However, even under the ― 'involves' prong, it cannot be said that his intention was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." Simply put, his offense was not calculated to achieve that objective. *See Awan*, 607 F.3d at 314.

To fall within the ― 'intended to promote' prong, the Defendant must have committed his offense with the intent to help bring about, encourage, or contribute to another person's commission of a federal crime of terrorism.  Again, the Defendant did not *intend* anything more than the production of translated ISIS propaganda materials and the dissemination thereof.  Further, there is no evidence

that Mr. Blanco intended to promote any plan by ISIS to commit a politically-motivated crime of terrorism.

Again, the key term, "a federal crime of terrorism," is defined to consist of two elements: (1) the commission of one of a list of specified felonies, which includes the material support offense at issue in this case, and (2) a specific intent requirement, namely, that the underlying felony was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5).

In this case it is clear that the Defendant did not have the specific intent to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. Therefore, by definition, the Defendant's offense was not a felony that involved, or was intended to promote, "a federal crime of terrorism," and the twelve (12) level enhancement should not be applied in this instance, nor should he receive a category VI criminal history designation.

In the case at bar there is no such evidence that the Defendant sought to coerce, influence, or retaliate against the United States or any other government.

In *United States v. Francisco Joseph Arcila Ramirez*, 16 F.4th 844 (11th Cir. 2021), Arcila Ramirez challenged the district court's application of the terrorism enhancement under U.S.S.G. § 3A1.4(a).

With regard to the term "involved," this Court already has concluded that the term "involved" in this guideline "means to 'include.' " *United States v. Mandhai*, 375 F.3d 1243, 1247-48 (11th Cir. 2004) (citing *United States v. Graham*, 275 F.3d 490, 516 (6th Cir. 2001)); *see also United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005) ("The ordinary and plain meaning of 'involved' means 'to include.' ") (citing *Random House Webster's College Dictionary* 1042 (2d ed. 1997)). As the Fifth Circuit explained, an offense "involved" a federal crime of terrorism if the crime of conviction itself is a federal crime of terrorism or if the relevant conduct includes such a crime. *United States v. Fidse*, 862 F.3d 516, 522 (5th Cir. 2017).

Similarly, the Second Circuit concluded that "a defendant's offense 'involves' a federal crime of terrorism when his offense includes such a crime, *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism ... or his relevant conduct includes such a crime." *United States v. Awan*, 607 F.3d 306, 313-14 (2d Cir. 2010); *see also United States v. Wright*, 747 F.3d 399, 407 (6th Cir. 2014) (stating "the terrorism enhancement can be applied to inchoate offenses, such as attempt and conspiracy"); *Graham*, 275 F.3d at 516 (same).

Like the Defendant in the case-at-bar, Arcila Ramirez's statute of conviction, 18 U.S.C. § 2339B, is one of the listed statutes. So, under the "involved" prong of U.S.S.G. § 3A1.4, the issue became whether Arcila Ramirez's offense or

relevant conduct was "calculated" to influence, affect, or retaliate against government conduct.

In *Arcila Ramirez,* this Court then went on to examine whether Arcila Ramirez' 18 U.S.C. § 2339B material support offense is a "federal crime of terrorism" as defined by 18 U.S.C. §2332b(g)(5). Inasmuch as Arcila Ramirez' offense was a listed crime, the only issue remaining was whether Arcila Ramirez' offense was "<u>calculated</u>" to influence, affect, or retaliate against government conduct.

This Court began its analysis with the statutory term "calculated." *See* 18 U.S.C. § 2332b(g)(5)(A), noting that the ordinary and plain meaning of "calculated" is planned to accomplish a purpose or intended. *See Calculated, Merriam-Webster Online Dictionary*, https://merriam-webster.com/dictionary/calculated (last visited Oct. 21, 2021) ("Planned or contrived to accomplish a purpose; Deliberate, intended."); *Calculated, Black's Law Dictionary* (11th ed. 2019) ("Planned so as to achieve a specific purpose; deliberate."); *Calculate, Oxford English Dictionary* (2d ed. 1989) ("To plan or devise with forethought; to think out; to frame."). "[C]alculated" means "planned—for whatever reason or motive—to achieve the stated object." *Awan*, 607 F.3d at 317. " 'Calculation' is concerned with the object that the [defendant] seeks to achieve through planning or

43

contrivance." *Id.* (citing *Calculated*, *Webster's Third New International Dictionary Unabridged* 315 (1986)).

Other circuits have read the phrase "calculated to" as creating something akin to, or closely resembling, "a specific intent" requirement. *See United States v. Alhaggagi*, 978 F.3d 693, 699-700 (9th Cir. 2020); *United States v. Ansberry*, 976 F.3d 1108, 1127-28 (10th Cir. 2020); *United States v. Mohamed*, 757 F.3d 757, 759-60 (8th Cir. 2014); *United States v. Wright*, 747 F.3d 399, 408-09 (6th Cir. 2014); *United States v. Hassan*, 742 F.3d 104, 148 (4th Cir. 2014); *Awan*, 607 F.3d at 317.

This Court addressed the Second Circuit's *Awan* decision's discussion of the term "calculated" and noted that it was instructive.  Defendant Awan was convicted of, *inter alia*, conspiring to provide, and providing, material support (funds) to the KCF, a Sikh terrorist organization in India, in violation of 18 U.S.C. § 2339A. *Awan*, 607 F.3d at 309-10. \

In vacating the District Court's denial of the terrorism enhancement, the Second Circuit held,  that §2332b(g)(5) does *not* require the government to prove the defendant's motive for committing the crime of conviction. *Id.* at 313. The Second Circuit explained that the word " '[c]alculation' is concerned with the object the actor seeks to achieve through planning and contrivance," rather than with the actor's particular motive. *Id.* at 317. The proper focus of the "calculation element"

of § 2332b(g)(5)(A) is not "on the defendant but on his 'offense,' asking whether it was 'calculated,' i.e., planned—for whatever reason or motive—to achieve the stated object." *Id.* The Second Circuit explained that "a person may intend and may commit an offense that is so calculated even if influencing or retaliating against government is not his personal motivation." *Id.*

As to Awan's offense, the Second Circuit observed that "there [was] little doubt that Awan (1) knew that the objective of [the KCF's leader] and the KCF was to influence the Indian government through violence, and (2) knew that the money he provided to the KCF would be used toward that end." *Id.* The Second Circuit acknowledged that Awan "may have been motivated, as the district court found, by a desire for ... prestige and potential influence." *Id.* It concluded, however, that "the government could still prove that Awan's offenses themselves were calculated to influence ... the conduct of government ... even if [Awan] lacked a specific political motive for committing them." *Id.* (quotation marks omitted).

Without deciding the issue, the Second Circuit indicated that "if the evidence showed that Awan engaged in criminal conduct with knowledge that confederates solicited his actions to effectuate politically motivated bombings in India, or homicidal attacks on the country's security forces or its political leaders, such proof could demonstrate that Awan's crimes were calculated to influence the conduct of government even if he was not personally motivated by that object."

317-18. The Second Circuit remanded for the district court to reconsider whether the evidence supported the terrorism enhancement. *Id.* at 318.

After discussing the *Awan* case, this Court then concluded that it agreed with *Awan* that "calculated" imposes an intent requirement, stating that for U.S.S.G. §3A1.4 to apply, the government must satisfy the "calculated" prong of §2332b(g)(5)(A). To do that, the government must show that the defendant's offense was planned to influence, affect, or retaliate against government conduct, even if that was not the defendant's personal motive.

This Court then went on to analyze the enhancement imposed in the *Arcila Ramirez* case, noting that the district court had made no fact findings as to the §3A1.4 enhancement. Rather, the district court appeared to believe the mere fact that Arcila Ramirez had pled guilty to knowingly providing material support to a known foreign terrorist organization *per se* triggered the terrorism enhancement.

The Court stated that it bears repeating that Arcila Ramirez's §2339B(a)(1) offense—providing material support to a foreign terrorist organization—required that he know that the ELN was a designated foreign terrorist organization and that the ELN has engaged in or engages in terrorism or terrorist activity. *See* 18 U.S.C. §2339B(a)(1). However, significantly this Court observed that §2339B(a)(1) does not contain the additional requirement found in § 2332b(g)(5)(A), that the defendant's offense be "calculated" (i.e., planned or

intended) to influence, affect, or retaliate against government conduct. Rather, it is only the definition of a "federal crime of terrorism" in §2332b(g)(5)(A) that requires the defendant's offense be so "calculated."

This Court noted that to assume an offense listed in § 2332b(g)(5)(B) is *per se* a "federal crime of terrorism" without a separate finding as to "calculated" would render the "calculated" requirement in § 2332b(g)(5)(A) superfluous. *Fidse*, 862 F.3d at 524; *United States v. Chandia*, 514 F.3d 365, 376 (4th Cir. 2008) (vacating and remanding because the district court "did not make any factual findings related to the intent [i.e., calculation] element."). This Court stated that whether a defendant's offense is calculated (i.e., intended) to influence, affect, or retaliate against government conduct is a highly fact specific inquiry that requires examining the record as a whole. Sometimes, the record will contain statements by the defendant expressing an intent to influence, affect, or retaliate against government conduct, however, because a defendant often will not admit his full knowledge or intentions, the district court may find the requisite calculation or intent existed based on circumstantial evidence and reasonable inferences drawn from the facts.

In the case at bar, the Defendant did not have the required specific intent, nor was his conduct calculated to influence government conduct or to retaliate against the government, and therefore, the district court erred in applying §3A1.4's terrorism enhancement.

47

## III.

THE TRIAL COURT ERRED WHEN, AFTER DETERMINING THAT THE TWELVE (12) LEVEL "TERRORISM ENHANCEMENT" APPLIED IN THIS CASE, THE COURT FAILED TO APPLY THE THREE (3) LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY FROM THE GUIDELINE LEVEL SET BY USSG §5G1.1(a), TO WIT: THE STATUTORY MAXIMUM (20-YEARS), BUT RATHER MERELY CONSIDERED THE ACCEPTANCE AS A DEPARTURE/VARIANCE FACTOR.

The total offense level calculated by the Presentence Investigation Report ("PSI") is 37, which with a criminal history category of VI renders a sentencing guidelines range of 360 months to Life imprisonment. [D.E. 35 and 79] (*Filed in separate envelope under seal*).

Because that range is higher than the statutorily authorized maximum term of 240 months under 18 U.S.C. §2339B(a)(1), the advisory sentence becomes 240 months under guidelines section 5G1.1(a). The plea agreement [D.E. 26/APPX.] at paragraph 8 provides that the Government would recommend a three-level reduction for acceptance of responsibility under USSG §3E1.1(a) and (b).

In this case, the trial court applied the reduction for acceptance of responsibility to the adjusted offense level of 40, resulting in a total offense level of 37, rather than applying the reduction for acceptance to the advisory guideline sentence as determined under section 5G1.1, to wit: 240-months, thereby rendering the reduction for acceptance wholly meaningless.

48

In *United States v. Rodriguez*, 64 F.3d 638 (11th Cir. 1995), the Eleventh Circuit recognized this inequity and found that "the [Sentencing] Commission failed to consider that §5G1.1 might operate to negate the §3E1.1 adjustment and undermine the 'legitimate social interests' served by the adjustment." *Rodriguez,* 64 F.3d at 643. In that case, due to the applicable drug quantity, the low end of Rodriguez' applicable guideline range, after being lowered for acceptance of responsibility was 135 months, which exceeded the statutory maximum sentence by 39 months. *Id.* at 640. Rodriguez argued to the district court that it should apply the three-level reduction for acceptance of responsibility to the section 5G1.1 guideline level. *Id.* at 640-41. The district judge observed that not crediting a defendant's acceptance of responsibility in such a situation was the equivalent of "giving away snow in wintertime;" but he imposed the maximum sentence of 96 months in prison because he believed he lacked the authority to grant what was essentially a downward departure based on Rodriguez' acceptance of responsibility. *Id.* at 641.

On appeal, the Eleventh Circuit reversed and remanded the case for resentencing, finding that the district court erred in concluding that it did not have the authority to depart. The Eleventh Circuit held that a sentencing court may grant a downward departure for acceptance of responsibility from an advisory guideline sentence calculated in accordance with §5G1.1(a). *Id.* at 643. The court reasoned that a reduction in offense level under §3E1.1 "suggests that the Commission

49

contemplated that a defendant would always receive some benefit at sentencing for accepting responsibility for his conduct." *Id*. (emphasis added).

Relying on *Rodriguez*, other district judges have departed downward in similar circumstances to effectuate a reduction for acceptance of responsibility.

Very recently, in the case of *United States v. Evelio Suarez,* SDFL Case No. 18-CR-20669-RNS-1, where the Defendant pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h), the Honorable Robert N. Scola, Jr. applied the three (3) level reduction for acceptance of responsibility to the lowest guideline range that encompassed the 240-month statutory maximum sentence within the applicable criminal history category III in that case.

Specifically, in that case the guideline provided that, "Based upon a total offense level of 39 and a criminal history category of III, the guideline imprisonment range is 324 to 405 months. Pursuant to §5G1.1(a), where the statutorily authorized maximum sentence is less than the minimum of the applicable range, the statutorily authorized maximum sentence shall be the guideline sentence. Therefore, the guideline term of imprisonment is 240 months."

That is almost the identical situation as presented in the case-at-bar. The only difference is the criminal history category of VI (due to the terrorism enhancement) in the case-at-bar vs. a criminal history category of III in the *Suarez* case, and a

resulting guideline range of 360-months to Life in the case-at-bar vs. 324 to 405 months in the *Suarez* case.

Ironically, applying the three (3) level reduction for acceptance of responsibility to the lowest guideline range that encompassed the 240-month statutory maximum sentence results in the identical guideline range of 151-188 months in both cases as discussed below. (On December 19, 2019, Judge Scola sentenced Mr. Suarez to 156-months.)

In *United States v. Corte*, SDFL Case No. 11-Cr-60123-Dimitrouleas (S.D. Fla. Sept. 9, 2011), the defendants who managed Scott Rothstein's law firm I.T. department requested the same departure. *Corte*, DE 43, 44. The Court granted the defendants a reduction for acceptance of responsibility from the advisory 60-month guideline sentence and imposed sentences of 37 months for the two defendants. Notably, each defendant had been held responsible for losses between $50 and $100 million.

Likewise, in *United States v. Gladstone*, SDFL Case No. 10-Cr-60195-Dimitrouleas (S.D. Fla. June 2, 2011), the Court granted a departure request in reliance on *Rodriguez*.

In the case of *United States v. Jose Luis De La Paz Roman* (SDFL Case No. 19-20004-CR-COOKE), the Court sentenced the defendant to 36 months, after apply

51

the reduction for acceptance of responsibility to the maximum statutory sentence, as requested herein.

Additionally, in a securities fraud case, Judge Altonaga likewise granted a similar reduction for acceptance of responsibility. *United States v. Sanders*, No. 16-20572-Cr- Altonaga (S.D. Fla. Feb. 17, 2017). Other courts granted departures in analogous cases. *See United States v. Hayes*, 5 F.3d 292, 295 (7th Cir. 1993) (granting two-level substantial assistance departure using "the lowest offense level consistent with a 60-month sentence"); *United States v. Jones*, 233 F. Supp. 2d 1067, 1075 (E.D. Wis. 2002) (granting two-level downward departure for exceptional rehabilitative efforts from *"the lowest range that would support the statutory maximum sentence")*. (Emphasis supplied.)

In the case-at-bar, the advisory guideline sentence is 240 months under §5G1.1(a). The lowest offense level correlating to 240 months with a criminal history category of VI is offense level 32 (a range of 210-262 months). Applying the three-level reduction for Jonathan Guerra Blanco's acceptance of responsibility from the offense level consistent with a 240-month sentence results in an offense level of 29, thereby rendering a range of 151-188 months of imprisonment.

Therefore, the trial court should have applied the three (3) level reduction for acceptance of responsibility from the guidelines sentence as determined by U.S.S.G. §5G1.1(a) as described in *United States v. Rodriguez*, 64 F.3d 638 (11th Cir. 1995).

Without conceding that the application of the twelve (12) level "terrorism enhancement" and a criminal history category of VI was appropriate as discussed in Issue One of this brief, it is submitted that the trial court should have applied the three (3) level reduction for acceptance of responsibility to produce an advisory sentencing guideline range of 151-188 months, not 240 months, which totally disregarded any benefit for the Defendant's acceptance of responsibility. It is submitted that any reduction by way of variance or departure should have been deducted from the 151 month figure.

The result was a sentence that was procedurally and substantively unreasonable.

## **CONCLUSION**

Based on the foregoing, it is submitted that this Honorable Court should vacate the sentence imposed, and remand this cause to the United States District Court for the Southern District of Florida for a resentencing hearing. Upon such resentencing hearing, the Defendant's advisory guidelines sentencing range should be recomputed without the application of the twelve (12) level "terrorism enhancement" and without a category VI criminal history designation.

Respectfully submitted,

Ana M. Davide, Esq.
Florida Bar No. 875996
ANA M. DAVIDE, P.A.
420 South Dixie Highway, Suite 4B
Coral Gables, Florida 33146
Telephone: (305) 854-6100
Fax: (305) 854-6197
E-mail:  ana@anadavidelaw.com
(Counsel for Appellant,
*Jonathan Guerra Blanco.*)

**/s/ Ana M. Davide**
Ana M. Davide, Esq.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

(Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements)

1.     This brief complies with the type-volume limitation of Fed.R.App.P.
32(a)(7)(B) because: this brief contains 12,120 words according to the MSWord
count, excluding the parts of the brief exempted by Fed.R.App.P. 32(f).

2.     This brief complies with the typeface requirements of Fed.R.App.P.
32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because: this brief
has been prepared in a proportionally spaced typeface using Times New Roman font
in 14-point font.

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 15th day of August, 2022, the foregoing Appellant's Initial Brief was filed using CM/ECF and served via CM/ECF on: Lisa Tobin Rubio, A.U.S.A., Office of the United States Attorney, 99 Northeast 4th Street, Suite 523, Miami, Florida 33132 [E-mail: lisa.rubio@usdoj.gov] and Brandy Brentari Galler, A.U.S.A., United States Attorney's Office, 500 South Australian Avenue, West Palm Beach, Florida 33401 [E-mail: Brandy.Galler@usdoj.gov].

Additionally, I certify that four (4) copies of the foregoing Appellant's Initial Brief have been sent to the United States Court of Appeals for the Eleventh Circuit *via* Federal Express.

Ana M. Davide, Esq.
Florida Bar No. 875996
ANA M. DAVIDE, P.A.
420 South Dixie Highway, Suite 4B
Coral Gables, Florida 33146
Telephone: (305) 854-6100
Fax: (305) 854-6197
E-mail:  ana@anadavidelaw.com
(Counsel for Appellant,
*Jonathan Guerra Blanco.*)

**<u>*/s/ Ana M. Davide*</u>**
Ana M. Davide, Esq.